## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **File No. 20-CR-27 (SRN/DTS)** |
| **Plaintiff,** | |
| | **ORDER** |
| **v.** | |
| **Demarlo Dontrell Hudson,** | |
| **Defendant.** | |

David Steinkamp and Justin Wesley, United States Attorney's Office, 300 South 4th St., Ste. 600, Minneapolis, MN 55415, for the Government

Jordan S. Kushner, Law Office of Jordan S. Kushner, 431 S. 7th St., Ste. 2446, Minneapolis, MN 55415, for Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Order Medical Care and Change in Custody ("Motion for Release") [Doc. No. 117] filed by Defendant Demarlo Dontrell Hudson. After testing positive for COVID-19 while in pretrial detention, Hudson seeks reconsideration of the magistrate judge's October 2, 2020 pretrial detention order. In particular, he requests hospitalization, followed by placement in home confinement with GPS monitoring. (Def.'s Mot. at 3.) For the reasons set forth below, the Court denies his motion.

### I.    BACKGROUND

In February 2020, the Government charged Hudson in a two-count indictment with distribution of fentanyl and possession with intent to distribute fentanyl. (Indictment [Doc.

No. 1].)  He is currently detained at the Sherburne County Jail in Elk River, Minnesota, awaiting trial.  (Def.'s Mot. at 1.)

After Hudson's first appearance in February 2020, he was released on bond, subject to certain conditions of pretrial release.  (Feb. 7, 2020 Orders [Doc. Nos. 8, 9].)  In September 2020, Pretrial Services filed a petition alleging that Hudson had violated some of those conditions [Doc. No. 60].  On October 1, 2020, Magistrate Judge David Schultz held a detention hearing and ordered that Hudson be detained.  (Oct. 1, 2020 Minutes [Doc. No. 69].)  The magistrate judge found that Hudson had violated his pretrial release conditions in the following ways:  (1) testing positive on ten separate occasions for controlled substances such as methamphetamine, ecstasy, and marijuana; (2) failing to appear for random drug testing on eight separate occasions; (3) submitting a urine sample that was so diluted it could not be reliably tested; (4) failing to report for a chemical dependency assessment as directed; (5) violating curfew on three separate occasions after being placed on location monitoring; (6) failing to respond to alerts on his GPS device on five separate occasions between September 5 and 28, 2020; (7) failing to appear in a drug case that commenced in 2015 in Cerro Gordo County, Iowa, for which there is an active arrest warrant; and (8) having been found to have two bags of marijuana at his current residence during a September 24, 2020 search executed pursuant to a warrant.  (Oct. 2, 2020 Order [Doc. No. 70] at 2–3.)

In his Motion for Release, filed on September 12, 2021, Hudson asserts numerous medical claims, including that he is:  (1) suffering from severe COVID-19 symptoms and has suffered continuously since his illness began on September 2, 2021; (2) coughing up blood; (3) experiencing difficulty breathing such that he must lay in bed and stay completely still in

order to have enough oxygen; (4) feeling as though he will pass out if he engages in any movement; (5) stopping to catch his breath midway between his bed and the toilet—a distance of four or five feet—whenever he needs to use the toilet; (6) having a stuffy nose; (7) having red eyes; (8) feeling a constant burning sensation in his brain; (9) having lost his sense of taste or smell; (10) lacking any appetite; and (11) requiring immediate hospitalization. (Def.'s Mot. at 1–2.)

After obtaining Hudson's consent to review his medical records on September 14, 2021, the Government acknowledges that Hudson lodged some of these complaints with the Sherburne County Jail staff. (Gov't's Opp'n [Doc. No. 122] at 3.) His records show that Hudson tested positive for COVID-19 on September 11, 2021. (*Id.*) In response to his complaints, medical staff examined Hudson on that day and reported the following: (1) blood pressure 137/87; (2) pulse 90; (3) oxygen saturation level 99%; (4) respirations 18; (5) walks to door of cell without difficulty; (6) calm and cooperative; (7) respirations even and non-labored; (8) alert and oriented x 4; and (9) lung sounds clear in all fields, but slightly muffled sounding in bases bilaterally. (*Id.* at 4.) Medical staff ordered treatment consisting of daily monitoring and follow-up, as needed, and advised Hudson to show corrections officers if he coughs up any blood. (*Id.*)

Along with these medical records, on September 15, 2021, counsel for the Government spoke with a nurse at the Sherburne County Jail who oversees Defendant's care. (*Id.*) The nurse reviewed Hudson's chart and reported the following regarding Hudson's condition the previous day: (1) he was not in need of hospitalization due to mild symptoms of COVID-19; (2) he had no fever; (3) he reported that he was not coughing up blood, nor

was he coughing at all; (4) he denied being short of breath; (5) he reported no muscle aches; (6) he reported no headache; (7) his oxygen saturation level was 99%; (8) he reported loss of the sense of smell; (9) he had some slight hypertension; (10) he weighs 301 pounds and is 6'1"; and (11) he is not taking any medication for diabetes or pre-diabetes. (*Id.*)  In addition, the nurse stated that Hudson is being monitored daily, is treated with Ibuprofen, and would be transported to the hospital if necessary. (*Id.*)  The Government states that the Sherburne County Jail is taking precautions to mitigate the spread of COVID-19 by quarantining Hudson and other inmates who test positive for the virus and by following CDC guidance such as mandatory mask wearing when staff interact with inmates. (*Id.* at 4–5.)  The Government therefore argues that because Hudson is not currently suffering from any acute symptoms of COVID-19, his motion should be denied as moot. (*Id.* at 5.)

On the merits, the Government argues that Hudson's motion should be denied because he fails to offer any meaningful reason for why his concerns about COVID-19 impact the magistrate judge's finding that he poses a flight risk or danger to the community. (*Id.* at 5–6.)

In reply to the Government's response, Hudson takes issue with the Government's characterization of the medical record and his criminal history. (Def.'s Reply [Doc. No. 123] at 1.)  First, he states that there is no indication that the nurse with whom counsel for the Government consulted has personally examined or had contact with him. (*Id.*)  In addition, Hudson contends that the medical records indicate that on September 11, 2021, medical staff took his vital signs and noted that he was coughing up blood, had no appetite, no taste, difficulty breathing, headaches, and a "chlorin feeling" in his brain—facts that are consistent

with those asserted in his motion, he argues.  (*Id*.)  With respect to his criminal history, Hudson offers explanations for some of the events that led to revocation of his pretrial release in October 2020, (*id*. at 3), and states that he has made positive changes in his conduct since he was ordered to be detained.  (*Id*. at 3–4.)  He therefore reiterates his request for an order directing that he be transported to a hospital and then home, or for an evidentiary hearing to ascertain his medical condition.  (*Id*. at 4.)

## II.    DISCUSSION

The parties present differing information regarding Hudson's health, although the Government does not contest that Hudson suffers from certain medical conditions that increase the risk of severe illness from COVID-19.[1]  (*See* Gov't's Opp'n at 4) (describing notes in medical records regarding Hudson's weight, slight hypertension, and whether he was taking any medication for diabetes or pre-diabetes).  Hudson complains that he has not been seen by "a doctor," but acknowledges that he has been treated for COVID-19 by medical staff at the Sherburne County Jail.  (Def.'s Reply at 2 ) ("The government falsely states that Mr. Hudson's substantive encounter with medical staff was with a doctor.  The medical record indicates that the medical staff person who interacted with Mr. Hudson was acting under the

---

[1]    The Court notes that nowhere in Hudson's motion does he indicate whether he has been vaccinated against COVID-19 or whether he has refused the vaccine.  In the related context of motions for release under 18 U.S.C. § 3582, numerous courts have denied requests for release where the inmate has refused the COVID-19 vaccine. *See, e.g., United States v. Coley*, No. 3:19-CR-144-HES-PDB, 2021 WL 1966498, at *2 (M.D. Fla. May 17, 2021) ("It is incongruous for a convicted felon to try to use Covid-19 to be released early from their lawful sentence yet reject the vaccine."); *United States v. Lewis*, No. 10-CR-392-10 (CS), 2021 WL 1873154, at *2 (S.D.N.Y. May 10, 2021) (finding no extraordinary and compelling circumstances based on COVID-19 risk where defendant refused vaccination).

supervision.").  While Hudson may not have been seen by an M.D., he is receiving medical care and monitoring.  In fact, while he has ready access to medical care at the Sherburne County Jail, he gives no indication about the type of care or treatment that would be available to him if he were to be released.

Importantly, regardless of the medical records, Hudson does not meet the legal standard necessary for pretrial release.  Although he cites no legal authority in support of his Motion for Release, 18 U.S.C. § 3142 applies to the release or detention of a defendant pending trial.  Hudson appears to argue that his COVID-19 diagnosis, or the COVID-19 pandemic in general, presents a change in circumstance that supports reopening the detention hearing under 18 U.S.C. § 3142(f), or an "exceptional reason" making his continued detention inappropriate under 18 U.S.C. § 3145(c).  Under § 3142(f), a detention hearing may be reopened if the Court determines that there is information, unknown to the movant at the time of the prior hearing, that has a "material bearing" on the issue of whether there are conditions of release that will assure the defendant's appearance in court and the safety of the community.  Under § 3145(c), a defendant may be released "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  Finally, a defendant may obtain temporary release when "necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).

When Magistrate Judge Schultz considered whether pretrial detention was warranted in October 2020 (Oct. 2, 2020 Order at 3–4), he properly applied the applicable factors under § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the

nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).  He noted that the Indictment established probable cause to believe that Hudson had distributed and possessed with intent to distribute fentanyl in violation of  21 U.S.C. § 841(a)(1), for which a rebuttable presumption for detention applied.  (Oct. 2, 2020 Order at 3) (citing 18 U.S.C. § 3142(e)(3)(A)).  Hudson offered no evidence to rebut this presumption.  (*Id*.)  But even without the presumption, the magistrate judge determined that detention was warranted due to the danger to the community, as evidenced by Hudson's alleged involvement in large-scale fentanyl trafficking and his poor record on pretrial supervision.  (*Id*. at 3–4.)  Further, Magistrate Judge Schultz found that Hudson posed a substantial risk of flight, as shown by his lengthy history of failing to appear in court, and his repeated curfew violations in this case.  (*Id*. at 4.)

While the Court is sympathetic to Hudson's medical concerns, they have no "material bearing" pursuant to § 3142(f) on the question of his risk of flight and the safety of the community.  *See United States v. Jones*, No. 1:17-cr-00582-CCB-2, 2020 WL 1323109, at *1 (D. Md. Mar. 20, 2020) (denying motion for release of detainee exposed to COVID-19 at another detention facility, despite detainee's underlying health issues including pregnancy, because such considerations were not the sole determinant of whether detention was appropriate under § 3142(g) factors); *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (denying relief under § 3142(f), finding that COVID-19 pandemic did not constitute information material to the question of defendant's particular risk to the public).  Hudson fails to explain how COVID-19 has a material bearing on these *risk factors*, and instead notes the threat to *himself* posed by the illness.  (*See* Def.'s

Mot. at 3) ("Notwithstanding the Court's prior findings regarding the seriousness of the offense and risk of nonappearance, he does not face a death sentence if convicted and should not be placed in such danger in order to continue his confinement.")

In his Reply, Hudson argues that the Government "exaggerates [his] prior criminal history." (Def.'s Reply at 3.) Specifically, he states that his 2015 Iowa arrest warrant was recalled in July 2021, and the positive drug tests that formed another basis supporting the revocation of his pretrial release (*see* Oct. 2, 2020 Order at 2) were "only for marijuana" for nine of the ten positive tests, and he has a medical prescription for marijuana. (*Id.*) But any potentially mitigating arguments about Hudson's drug test violations were arguments that were made, or could have been made, to the magistrate judge at the detention hearing. The apparent recall of the Iowa arrest warrant, while recent, is not sufficient to alter the Court's conclusion that Hudson poses a risk of flight and danger to the community, particularly in light of the numerous other pretrial violations that the magistrate judge identified in the October 2, 2020 detention order. (*Id.* at 2–3.) Because Hudson's current medical condition has no material bearing on the risk factors that the Court considered when it denied detention in October 2020, there is no basis for reopening the detention hearing under § 3142(f), and no hearing is warranted. Nor do the circumstances here constitute an exceptional reason warranting release under § 3145(c), or make temporary release "necessary" under § 3142(i). Regardless of the statutory basis for Defendant's motion—whether under § 3142(c), (i), or (f)—consideration of the § 3142(g) detention factors, noted earlier, strongly weighs in favor of his continued detention.

In addition, other than offering to wear a location monitor, Hudson does not address whether any conditions could be imposed to ensure his appearance at future court proceedings or whether he poses a danger to the community.[2]  The Court is encouraged that Hudson has completed treatment programs at the Sherburne County Jail and earned four certificates, (Def.'s Reply at 3), but his past conduct demonstrates repeated disregard for conditions of release and court appearances, and the Court is unpersuaded that any conditions of release are warranted now.   Moreover, danger to the community is evident from Hudson's alleged involvement in trafficking fentanyl, a highly dangerous drug, as the Indictment alleges he distributed approximately 1,000 pills containing fentanyl and later possessed with intent to distribute another 479 such pills.  *See United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986) (finding, in context of pretrial detention, that "large scale drug trafficking is a serious danger to the community.").

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Defendant's Motion to Order Medical Care and Change in Custody [Doc. No. 117] is **DENIED**.

Dated:  September 24, 2021                              s/Susan Richard Nelson
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge

---

[2]     Only in his Reply does Hudson indicate with whom he proposes to live if he were to be released, which is with his significant other and four children.  (Def.'s Reply at 4.)  He fails to indicate where he would live.